IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal Action No. 1:24-mj-490 (RDA) |
| ) | |
| KALEEL MALCOLM NAGBE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the government's Motion for Revocation of the Magistrate Judge's Order of Release. Dkt. 15. Defendant has filed an Opposition. Dkt. 17. Considering the Motion, Defendant's Opposition, as well as the arguments raised by counsel at the hearing held before this Court on December 18, 2024 and before the Magistrate Judge on December 12, 2024, this Court GRANTS the Government's Motion and REVOKES the Order Setting Conditions of Release for the reasons that follow.

I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background set forth herein is drawn from the Affidavit in Support of Criminal Complaint (Dkt. 2), the Pretrial Services Report (Dkt. 10), and the evidence and argument presented both before U.S. Magistrate Judge Lindsey R. Vaala and this District Judge.

Defendant is 20 years old. Defendant has a previous conviction for possession of a firearm by a minor for which he was sentenced in state court to five years of incarceration with all but 367 days suspended and five years of supervised probation. Defendant is currently supervised by a probation officer in Maryland in connection with that state offense.

There is some confusion on the record regarding where Defendant has resided for the past few years. Defendant reported to the U.S. Pretrial Services Officer that he currently lives with his father and stepmother in Martinsburg, West Virginia. Defendant's father reported, however, that Defendant had been living with his mother in Baltimore, Maryland. Defendant also reported to his Maryland probation officer that he was residing with his mother in Baltimore, Maryland (including as recently as November 27, 2024). Defendant's father reported that there were no firearms at either his residence or the mother's residence.

The record also reflects some confusion regarding Defendant's employment. Defendant reported to the U.S. Pretrial Services Officer that he has been employed by his father's real estate company since December 2023. Indeed, in conversations with police officers, Defendant asserted that the car in which he was stopped belonged to his father's real estate company. Defendant's father, however, reported that he was unsure whether Defendant was employed and stated that Defendant may have started a construction business a year ago.

Defendant's mother has a criminal history that includes: (i) a 2002 arrest for assault, malicious destruction of property, and violation of a protective order; (ii) a 2007 arrest for issuance of bad checks; and (iii) a 2016 arrest for driving while suspended. The 2002 and 2007 charges were *nolle prossed*. Defendant's mother works full-time for a home health care services company in Washington, D.C., from 8:00 a.m. to 4:30 p.m., Monday through Friday, and her employer requires that she work in-person two days a week. Pretrial Services considers Defendant's mother a suitable third-party custodian.

The offense conduct at issue here arises out of a traffic stop on the Pentagon Reservation on December 7, 2024. On that day, Pentagon Force Protection officers stopped the car that Defendant was driving because they observed Defendant driving while using a cellphone in violation of Virginia law. During the traffic stop, officers could smell marijuana coming from the

car.  Officers asked Defendant to exit the vehicle to conduct a search.  Defendant exited, but upon questioning by officers, reentered the vehicle and attempted to flee with officers hanging onto the vehicle.  Dkt. 2 at 3 ¶ 6.  Eventually, Defendant was detained, but three officers were required to subdue Defendant while he was physically resisting.  *Id*. One officer was injured and required medical attention at the hospital following the altercation.  *Id.*

Once secured, officers searched Defendant and discovered a Glock 26 firearm with serial number BSMB805.  When officers ran the registration on the serial number, no results returned for the gun.  The gun was also fitted with an all-black automatic selector switch which transforms a semi-automatic handgun into a fully automatic gun.  The gun was loaded with a full 16 round magazine and one in the chamber.

According to officers, Defendant was advised of and waived his *Miranda* rights at the scene before informing officers that he located the gun in the glovebox when he initially retrieved the vehicle.  Later, Defendant was again advised of and waived his *Miranda* rights when questioned by officers at the Pentagon Support Operations Center.  This time, Defendant provided a different version of events indicating that he opened the center console to retrieve his driver's license when he saw the officers' emergency lights and that it was only then that he discovered the firearm.

The officers' search of the vehicle revealed two large white trash bags and one black Nike backpack in the trunk.  Each was filled with transparent plastic bags containing green leafy substances resembling marijuana.  In total, the possible marijuana weighed 14.40 pounds.  Defendant was arrested at the conclusion of this stop.

On December 9, 2024, a criminal complaint was filed alleging that Defendant had violated 18 U.S.C. § 922(g)(1).  On December 12, 2024, following the completion of a Pretrial Services Report ("PTSR"), the defendant appeared before Judge Vaala for a detention hearing.  Upon the conclusion of the hearing, Judge Vaala ordered the defendant released on a personal recognizance

bond, subject to standard conditions as well as certain special conditions, including: remaining in the custody of a third-party custodian, home detention, location monitoring, supervision by the Pretrial Services Office, and travel restrictions. On the motion of the government, the magistrate judge agreed to stay entry of the release order until December 13, 2024, at 4:00 p.m. Thereafter, this Court granted a subsequent motion to stay pending a hearing before this District Judge. Dkt. 14. The government filed its Motion for Revocation that same day. Dkt. 15.

A hearing was held on December 18, 2024.

## II.  STANDARD OF REVIEW

18 U.S.C. § 3145(a) allows this Court to revoke a magistrate judge's release order. It is uncontested that in doing so, the Court reviews the magistrate judge's determinations *de novo*. *See, e.g.*, *United States v. Clark*, 865 F.2d 1433, 1438 (4th Cir. 1989); *United States v. Burgess*, 2:17-cr-153, 2017 WL 6542939, at *1 (E.D. Va. Dec. 19, 2017). For pretrial detention to be imposed on a defendant, "the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). The finding depends on whether the government has shown, by a preponderance of evidence, that the defendant poses a flight risk or that, by clear and convincing evidence, the defendant poses a danger to his community *and* that no conditions of release can reasonably cure these risks. *See United States v. Mallory*, 268 F. Supp. 3d 854, 865-66 (E.D. Va. 2017). If the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant *must* be detained pending trial. 18 U.S.C. § 3142(e).

Under 18 U.S.C. § 3142(g), the Court must consider four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) The weight of the evidence against the person; (3) The history and

4

  characteristics of the person, including: The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

### III. ANALYSIS

A review of the record evidence here, in particular the affidavit regarding the circumstances surrounding Defendant's arrest, as well as a weighing of the factors set forth in Section 3142(g) reveals that the government has met its burden on both prongs of the analysis here: risk of flight and danger to the community.[1] Accordingly, the order of release will be revoked. The Court will address each factor in turn.

#### A. The Nature and Circumstances of the Offense

As this Court has previously noted, "[p]ossession of a firearm by an already convicted felon is a very serious offense." *United States v. Riley*, 635 F.Supp.3d 411, 417 (E.D. Va. Oct. 13, 2022). Indeed, Section 3141(g)(1) specifically requires the Court to consider whether a charged offense involves a firearm. Moreover, the Court must also consider the nature of the firearm at issue here: a loaded firearm with one in the chamber with apparently no external safety mechanism, that has been converted into a fully automatic weapon, with a dubious serial number that connects to no known registration. The average firearm is already a dangerous weapon in the wrong hands, but

---

[1] Perhaps unfairly, it appears that the government did not make the same arguments to Judge Vaala regarding risk of flight that it makes here. In determining that Defendant did not present a risk of flight, Judge Vaala noted that the government had not made any arguments in this regard and that the argument focused on dangerousness. Dkt. 12 at 2 n.1. Although the Court reviews the order here *de novo*, the government is reminded that it should make all of its arguments in favor of detention before the magistrate judge so that the magistrate judge has an opportunity to assess those arguments.

5

here the danger is manifoldly increased by the presence of a bullet in the chamber in a fully automated weapon. Additionally, in one version of events told to officers, Defendant admitted to grabbing and hiding the firearm *on his person* in response to seeing the police officer's emergency lights. Finally, Defendant's vehicle was found to hold more than fourteen pounds of marijuana. Courts have found a defendant's possession of pounds of marijuana in conjunction with being a prohibited person in possession of a firearm weighs in favor of detention. *See United States v. Rizzo*, 2021 WL 409838, at *3-*4 (W.D. Pa. Feb. 5, 2021) (relying on a defendant's possession of five pounds of marijuana to support detention on a Section 922(g)(1) charge). It is readily apparent that guns and drugs are a dangerous combination.

In addition to the danger apparent from the circumstances surrounding the charged offense, Defendant also demonstrated a high likelihood of flight during the events leading up to his arrest. Indeed, here, Defendant attempted to flee the scene when he was asked questions by officers. Apparently, Defendant's need to flee was so strong that he endangered the lives of three officers who were hanging on the back of the vehicle as Defendant attempted to flee. Dkt. 2 at 3 (describing Defendant as "attempt[ing[ to flee with officers hanging onto the vehicle"). Moreover, even after Defendant was detained, he continued to physically resist. *Id.* Thus, Defendant's conduct at arrest demonstrates a propensity for flight. Courts have recognized that this behavior supports detention. *See United States v. Alston*, 2011 WL 579341, at *4 (D.S.C. Feb. 9, 2011) (holding that "defendant's assault on the arresting officer and his attempt to flee" supported detention). Defendant attempts to downplay his conduct by arguing that he was not told not to reenter the vehicle and by blaming the officer for "physically engag[ing]" first as Defendant attempted to reenter the vehicle after being informed that the vehicle would be searched. Dkt. 17 at 3. This argument is unpersuasive as it has long been established that drivers can be instructed to exit a vehicle for officer safety. *See United States v. Walker*, 575 F. App'x 146 (4th Cir. 2014).

6

B. The Weight of the Evidence

Here, the government proffers that the offense conduct was captured on officers' body cameras and that "[t]he high-definition footage shows" the defendant, the struggle, and the retrieval of the firearm in question. Dkt. 15 at 6. Again, as this Court has previously recognized, "surveillance footage" weighs "heavily against Defendant." *Riley*, 635 F. Supp. 3d at 417. The weight of such evidence supports both a risk of flight, because of how such evidence will play before a jury, and the dangerousness to the community. Defendant does not contest the weight of the evidence. Dkt. 17 at 4. This factor thus also weighs in favor of detention.

C. History and Characteristics

Defendant's history and characteristics also weigh in favor of detention. There are conflicts between Defendant's report to Pretrial Services and Defendant's father's report; in particular, there are conflicts regarding where Defendant has been living and his employment status. Those conflicts are brought into focus by information that Defendant provided to officers during his arrest: namely, that the car belongs to his father's business and that Defendant "found" the gun in the car.[2] Defendant and Defendant's father both disclaimed to Pretrial Services that any firearm is located at either of his parents' residences.

Importantly, Defendant has given contradictory information to Pretrial Services here and to his probation officer for his Maryland case: Defendant informed officers in this District that he was living in West Virginia while he informed Maryland officers that he was living in Baltimore, Maryland. A lack of truthfulness to supervising officers raises concerns regarding both risk of flight and dangerousness to the community. *See United States v. Maxwell*, 510 F. Supp. 3d 165,

---

[2] Indeed, during the hearing before Judge Vaala, defense counsel suggested that it was the father who may have misrepresented information to U.S. Pretrial Services. *See* Dkt. 16, Dec. 12, 2024 Tr. at 24:18-20 ("I think some of the confusion is because of who the car is registered to, and maybe somebody has some concern that it may go back to their business.").

7

175 (S.D.N.Y. 2020) ("Most notably, the Defendant's pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly on the Court's application of the third factor to the present case."); *see also United States v. Mitchell*, 2023 WL 5438156, at *3 (E.D. Va. Aug. 23, 2023). During the hearing before Judge Vaala, defense counsel put forward a different explanation for the conflict in reported addresses, stating "I think what's clear is he's splitting time between the two parents." Dkt. 16, Dec. 12, 2024 Tr. at 27:21-22. But this explanation is supported by neither Defendant's report nor the father's report to pretrial services. Moreover, even with such an explanation, defense counsel acknowledges that his client would have been "playing it fast and loose" regarding his Maryland probation. *Id.* at 28:1-2. Notably, although Defendant's Opposition argues that these discrepancies do not represent a lack of candor, Defendant offers no further explanation. Dkt. 17 at 4. Furthermore, Defendant did not address the discrepancy in reports of employment status between Defendant's statements and his father's statements to Pretrial Services.

   Finally, Defendant is alleged to have committed the offense charged here while he was on supervision in Maryland. Although Defendant does not have a lengthy criminal history, it is concerning that Defendant is alleged to have committed this offense within approximately a year after having been released from his prior sentence and while on supervised release. *See United States v. Nickens*, 2023 WL 5938650, at *2 (D. Md. Sept. 12, 2023) (affirming detention order where the Defendant committed the offense shortly after being released). Defendant argues that he has performed well on probation, but this is belied by the fact that he has been arrested for this offense and by the fact that he is providing conflicting information regarding his employment status and living situation. Thus, this factor also weighs in favor of detention.

D.   Nature and Seriousness of the Danger

As the government emphasizes, Defendant was in possession of an altered and fully automated firearm with no apparent registration and the weapon was found in close proximity to fourteen pounds of marijuana. Moreover, Defendant is alleged to have committed this crime while on probation and is accused of injuring law enforcement officers. In particular, Defendant's reaction to his arrest here, raises concerns about the safety of the officers who would be required to supervise Defendant and the risk that, if he perceived his release would be at risk of being revoked, he would pose a danger to members of Pretrial Services. Thus, the allegations in this case demonstrate a danger to law enforcement with whom he may come in contact and to the community at large.

Defendant's argument with respect to this factor focuses on the fact that drugs were not found on Defendant's person; rather, drugs were found on his passenger's person. Dkt. 17 at 4. This argument ignores that 14 pounds of suspected marijuana were located in the vehicle that Defendant was driving, which Defendant claims belongs to Defendant's father's business where Defendant also claims to have been employed. Thus, Defendant's argument that the suspected marijuana found in the vehicle are not connected to Defendant is not persuasive.

\*   \*   \*

In sum, the Court finds that the government has met its burden of establishing that Defendant presents a risk of flight by a preponderance of the evidence and a danger to the community by clear and convincing evidence.

E.   No Conditions or Set of Conditions

Having determined that Defendant presents a risk of flight and a danger to the community, the Court must next assess whether any set of conditions could ameliorate those risks. The Court finds that they could not. With respect to the risk of flight, Judge Vaala imposed location

9

monitoring to reduce that risk. The Court finds that such condition is inadequate to remove that risk, given that Defendant was unafraid to physically resist officers in order to evade arrest here, the Court has concerns that location monitoring would only reduce Defendant's "head start should a defendant decide to flee" because the ankle monitor can be removed. *United States v. Wang*, 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023); *Mitchell*, 2023 WL 5438156, at *5.

The Court also has concerns that the third-party custodian and supervision may be inadequate to protect the public given that Defendant has given conflicting information to different probation officers regarding his living situation, that Defendant is alleged to have committed the charged offense while under supervision, and that Defendant may have been living with his mother (the proposed third party custodian) at the time that he is alleged to have committed the charged offense. *See Maxwell*, 510 F. Supp. 3d at 175 ("Most notably, the Defendant's pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly on the Court's application of the third factor to the present case."); *see also See United States v. Bryant*, 2022 WL 413962, at *4 (S.D. W.Va. Feb. 9, 2022) (noting that the fact that the proposed third-party custodian was apparently unaware of the defendant's charged criminal activities means that custodian may be unable to identify or prevent similar activities on release). In particular, the Court has concerns regarding the safety of supervising officers and the public, given Defendant's alleged behavior during the traffic stop. In similar circumstances, courts within this Circuit have held that, "[e]ven the strictest conditions of release to include a third party custodian, electronic monitoring and related conditions are inadequate to ensure the safety of the community." *United States v. Moore*, 2021 WL 1017388, at *2 (D. Md. Mar. 17, 2021) (detaining defendant charged under Section 922(g)(1) with possessing a loaded firearm). Accordingly, the Court finds that no condition or set of conditions could ameliorate Defendant's risk of flight or risk to the public.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that the motion (Dkt. 15) is GRANTED; and it is

FURTHER ORDERED that Judge Vaala's Order Setting Conditions of Release is REVOKED; and it is

FURTHER ORDERED that Defendant Kaleel Malcolm Nagbe shall be detained pending trial.

It is SO ORDERED.

Alexandria, Virginia
December 18, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

11